UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POLYONE CORP., <br><br> Plaintiff, <br><br> v. <br><br> YUN MARTIN LU, et al., <br><br> Defendants. | No. 14 CV 10369 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an American plastics manufacturer, claims defendants conspired with plaintiff's former employee in an illegal effort to compete with plaintiff in the manufacture and sale of TPEs—a soft plastic. Plaintiff's five-count amended complaint alleges state-law claims for misappropriation of trade secrets, tortious interference with contract, tortious interference with prospective business relations, and civil conspiracy. Plaintiff also claims multiple violations of the federal Computer Fraud and Abuse Act.

Defendants have moved to dismiss (1) for improper service, (2) for lack of subject matter jurisdiction, and (3) for failure to state a claim. For the following reasons, all three motions are denied.

I.  **Legal Standard**

Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023

(7th Cir. 2001) (internal quotation omitted). The burden of establishing that a district court has proper jurisdiction lies with the plaintiff. *Id.* A defendant arguing that a plaintiff has not met this burden may move for dismissal under Federal Rule of Civil Procedure 12(b)(1). When reviewing a 12(b)(1) motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993) (internal quotation omitted).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [the court] accept[s] the well-pleaded

2

facts in the complaint as true...." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

## II. Background

Plaintiff PolyOne is one of the world's leading providers of specialized polymer materials, services, and solutions. [22] ¶ 12. Among its products are so-called TPEs—a type of soft plastic used in a variety of applications, including toothbrush grips, synthetic wine corks, and cap liners. *Id.* ¶ 13. Plaintiff's TPE formulations are closely-guarded trade secrets. *Id.*

In 2005, defendants Tie-Liang Tyler Xu and Yun Martin Lu—a former PolyOne employee—started a competing TPE company in China called Polymax Nantong. *Id.* ¶¶ 14, 16. They were later joined by another former PolyOne employee, defendant Thomas Castile. *Id.* ¶ 15.

In 2008, Lu began having conversations with non-party Joseph Kutka about expanding Polymax to the United States and Europe. *Id.* ¶ 18. Kutka was a PolyOne employee and thus subject to a non-compete agreement. *Id.* ¶ 19. Kutka's lawyer advised him that, if he were to leave PolyOne, the agreement would ban him from working in the TPE area in North America for at least a year. *Id.* ¶ 19. Kutka continued to develop his relationship with Lu and Polymax and later began to actively help the company establish its American presence. *Id.* ¶ 20.

In 2010, Kutka, Castile, Lu, and Xu began conspiring to steal a large customer away from PolyOne in the hopes of establishing Polymax's foothold in the United States. *Id.* ¶¶ 24–26. Castile contacted the customer and obtained a sample

3

of PolyOne's confidential pellets for analysis, even though agreements between PolyOne and the customer prohibited such disclosure. *Id*. ¶ 30. Defendants eventually persuaded the customer to do business with them instead of PolyOne. *Id*. ¶ 36.

By May 2013, Kutka had decided to leave PolyOne for Polymax TPE (the American Polymax entity). *Id*. ¶ 48. In order to help his new company, Kutka decided to download tens of thousands of PolyOne files, which contained confidential trade secrets and other proprietary information. *Id*. Around this same time, Kutka installed a document destruction program called CCleaner (though plaintiff does not allege that Kutka ever used it). *Id*. ¶ 49.

Kutka left PolyOne in late 2013. *Id*. ¶ 61. PolyOne sued him and, on February 27, 2015, a jury in the Northern District of Ohio returned a verdict finding Kutka liable for breach of his employment agreement, breach of the duty of loyalty, and spoliation of evidence. *Id*. ¶ 64. The defendants in this case—Lu, Castile, Xu, Polymax TPE, and Nantong Polymax—were originally named in the Ohio action, but later dismissed with the understanding that the case against them would be refiled in the Northern District of Illinois. *See* [40-1].

Plaintiff's five-count amended complaint alleges misappropriation of trade secrets, tortious interference with contract, tortious interference with prospective business relations, civil conspiracy, and violations of the Computer Fraud and Abuse Act. Plaintiff suggests the CFAA claim gives this court federal-question jurisdiction, and that, alternatively, jurisdiction arises from the parties' diverse

4

citizenships. *See* 28 U.S.C. §§ 1331–32. Defendants deny that subject matter jurisdiction exists.

**III. Analysis**

    **A. Motion to Dismiss for Improper Service**

Defendant Nantong Polymax has separately moved under Rule 12(b)(5) to dismiss the amended complaint against it on the basis that it was not properly served. Rule 4 provides two ways to serve a business. First, a plaintiff may "deliv[er] a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. Pro. 4(h)(1)(B). Second, a plaintiff may serve by following state law, which in Illinois means "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State . . . ." 735 ILCS 5/2-204.

Here, plaintiff purported to serve Nantong Polymax by serving Yun Martin Lu. Nantong Polymax contends this attempt did not accomplish service, however, because—though Lu is a member of Nantong Polymax's Board of Directors—he is not (1) "an officer, a managing or general agent," or (2) "an officer or agent." While the company admits Lu was a founder of Nantong Polymax and serves as its "Technology VP," [41-1] ¶¶ 6–7, they insist he "is not an officer," [41] ¶ 7.

Whether someone fits the roles at issue comes down to whether "it is reasonable to assume that he or she will transmit notice of the commencement of an action to his or her superiors." 62B Am. Jur. 2d § 246 (2015); *see also People v.*

*Beaulieu Realtors, Inc.*, 144 Ill.App.3d 580, 507 (1st Dist. 1986); *United Bank of Loves Park v. Dohm*, 115 Ill.App.3d 286, 291 (2d Dist. 1983). A person who founds a company and then continues to be paid for serving as its Technology VP satisfies this test. Not only was it probable that Lu would get the summons to the correct people within the organization—that in fact happened.

Defendant Nantong Polymax's motion to dismiss for improper service is denied.

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants say subject matter jurisdiction does not arise under 28 U.S.C. § 1332 because not all of the parties' citizenships are diverse. Specifically, they contend that Xu is domiciled in China and, as a result, is not a citizen of any American state. *See* 28 U.S.C. § 1332(a)(3) ("The district courts shall have original jurisdiction of all civil actions . . . between citizens of *different States* and in which citizens or subjects of a foreign state are additional parties") (emphasis added). Defendants also believe that Polymax TPE is "stateless" because two of its members, Xu and Robert Xinhai Hou, are domiciled in China. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members"); *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002) ("Citizenship for purposes of the diversity jurisdiction is domicile").

Domicile has two elements: (1) physical presence or residence, and (2) an intent to remain in the state. *Midwest Transit, Inc. v. Hicks*, 79 Fed. App'x 205, 208

6

(7th Cir. 2003). "This test works well for cases in which both elements naturally coincide, but it is becoming increasingly outdated as more people buy second or even third residences in different states; in these situations, the test can turn into a complex, even arbitrary, inquiry into an individual's intent." *Id*. "In more complex cases, courts have tried to glean intent from the following factors: current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Id*. The party seeking to establish jurisdiction bears the burden of proof. *Id*.

Here, everyone agrees Xu was domiciled in Illinois at least until he moved to China in 2005, but the sides disagree about Xu's status after that. The record contains evidence favorable to both sides' positions. On the one hand, Xu has resided in China from 2005 to the present; he says it was his intention when he moved "to make a home for [himself] in Ningbo City and stay there for a long period of time in order to work [on] the business"; he purchased a residence in Nantong City in 2008; his wife followed him to China in 2011; he does not own a car or any personal property in the United States; he rents out the only American real estate he owns; he has a Chinese driver's license; and he says he has no present plans to return to the United States. [28-1] ¶¶ 3, 5, 8, 11, 14, 28. All of these factors militate in favor of Xu being domiciled in China.

At the same time, a number of factors cut in favor of Xu being domiciled in Illinois. When he left in 2005, his wife and daughter remained living in the family

7

home in Woodridge, Illinois; Xu still owns that home and continues to claim the Illinois Homestead Exemption on it; when they were apart, Xu would return to visit his family quarterly; he has not taken any steps to renounce or abandon his United States citizenship; he has done nothing toward becoming a Chinese citizen (he is in the country on a work visa); he files taxes in Illinois; he has an Illinois driver's license; he has a bank account in Illinois; he has medical insurance through the Affordable Care Act and says he would return to the United States if he developed health problems; and Xu would like to retire in three to five years and return to the United State to be near his daughter (who lives in Chicago). *Id.* ¶¶ 2, 6, 7, 13, 15, 17, 22, 24, 25, 28, 29; [36] at 15.

Weighing these factors, the preponderance of the evidence shows that Xu never intended to relocate to China permanently or indefinitely. Xu has always planned to return to the United States—likely Illinois—for one reason or another. Xu affirmatively stated he would like to move back in as few as three years when he retires. By the same token, Xu has taken no steps toward becoming a Chinese citizen and it is therefore unclear how he could remain once he stops working. Xu has continuously maintained a presence in Illinois such that he would be able to relocate back to the United States with ease. Although it is a close call, the weight of the evidence favors finding Xu to be domiciled in Illinois.

Turning to Hou, defendants offer one paragraph from Lu's affidavit in support of the argument that Hou is domiciled in China ([28-4] ¶ 27):

> Polymax TPE has another member, Robert Xinhai Hou, who I understand is a United States citizen domiciled in China. Hou was

8

> working for the Ford Motor Co. and living with his family in Michigan until approximately 2009. He was transferred by Ford and moved to Shanghai, China in 2009, with his family. He had a home in Michigan, which he rented out when he moved. Hou remains in China with his family. My understanding is that he anticipates that he may be transferred by Ford to return to the United States and possibly Michigan sometime in 2016, but he has no present plans or instruction from Ford to move from Shanghai. For a United States address, he uses his brother's address in Massachusetts, but he does not live there. I am unaware that he has any place in the United States to live.

To be admissible, an affidavit must be based on personal knowledge. *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 & n. 6 (10th Cir. 1992) (holding that Rule 56 requirements of personal knowledge, competency and admissible facts apply to affidavits submitted in support of or in opposition to motions to dismiss on jurisdictional grounds). As plaintiff notes, Lu's affidavit provides no foundation for his ability to swear to facts about Hou's domicile. The only connection Lu appears to have to Hou is that both are associated with Polymax TPE. But that alone does not support the conclusion that Lu has personal knowledge of Hou's work arrangement with his employer. Nor does Lu otherwise claim to have ever discussed Hou's intentions with him. Defendants have therefore offered no evidentiary basis—as concerns Hou—to reject the amended complaint's allegation that Polymax's members "are citizens either of foreign states or US states other than Ohio." [22] ¶ 9.

Moreover, even if Paragraph 27 of Lu's affidavit were based on personal knowledge, the facts set forth show that Hou remained domiciled in Michigan. All we know is that Hou was moved to China by his employer (an American company), his family accompanied him, he kept his home in Michigan, and he may be

9

transferred back to Michigan in 2016. These facts do not support the conclusion that Hou intended or expected to abandon his domicile in Michigan and remain in China permanently or indefinitely. *See King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1172–73 (11th Cir. 2007) (noting rule that a citizen of a state does not lose his domicile when his employer sends him abroad).

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

### C. Motion to Dismiss for Failure to State a Claim

#### 1. Computer Fraud and Abuse Act

In Count V, plaintiff claims Kutka violated the Computer Fraud and Abuse Act and that defendants are jointly liable as his co-conspirators. As a preliminary matter, defendants say plaintiff is barred from bringing this claim because—in the Northern District of Ohio action against Kutka—plaintiff voluntarily withdrew a CFAA claim in response to Kutka's pretrial motion for judgment on the pleadings. Defendants believe this prior withdrawal should be construed as a dismissal with prejudice under Rule 41. Plaintiff disagrees, suggesting instead that its prior withdrawal was an implicit amendment under Rule 15(a). In support of this position, plaintiff cites *Hells Canyon Preservation Council v. United States Forest Service*, in which the Ninth Circuit held that an oral withdrawal of a claim in the face of summary judgment was best understood as an oral amendment not resulting in a final judgment on the merits (so long as the other side did not object to the withdrawal and the court did not grant the motion as to the claim). 403 F.3d 683,

10

685–90 (9th Cir. 2005). *Hells Canyon* rejected the argument that Rule 41 controlled the situation, reasoning that it (at least Rule 41(a)) applies to entire actions—not individual claims. *Id.* at 687–88. And even though the district court in *Hells Canyon* did not explicitly say it was permitting a Rule 15(a) amendment, the Ninth Circuit said the lower court had made clear that the claim was no longer before it when it denied the motion as moot. *Id.* at 689–90.

The Seventh Circuit appears not to have addressed this issue, and *Hells Canyon* is more persuasive than defendants' distinguishable cases, in which (1) plaintiffs attempted to bring suit against the same defendants, (2) plaintiffs voluntarily dismissed claims after other claims had been rejected on the merits, (3) courts dismissed entire actions under Rule 41, or (4) courts misapplied Rule 41(a) to individual claims. *See* [38] at 6–8. None of these scenarios fits the case at bar. Plaintiff's unopposed prior withdrawal of its CFAA claim was an amendment under Rule 15(a) and thus it was not a preclusive dismissal with prejudice.

To state a claim for a violation of the Computer Fraud and Abuse Act, a plaintiff must allege (1) damage or loss; (2) caused by; (3) a violation of § 1030; and (4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)–(V). 18 U.S.C. § 1030(g). The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). Courts in this district have consistently interpreted this to mean "the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any diminution in the completeness or usability of the data on a computer system." *See,*

11

*e.g., Farmers Ins. Exch. v. Auto Club Grp.*, 823 F.Supp.2d 847, 852 (N.D. Ill. 2011) (collecting cases). Downloading and emailing trade secrets, by contrast, does not amount to "damage" under the CFAA. *Id.*

"Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).[1] District courts in this circuit have construed the term "loss" in different ways. *Compare Farmers Ins. Exch.*, 823 F.Supp.2d at 854 ("[A] plaintiff can satisfy the CFAA's definition of loss by alleging costs reasonably incurred in responding to an alleged CFAA offense, even if the alleged offense ultimately is found to have caused no damage as defined by the CFAA.") (citations omitted), *with Von Holdt v. A–1 Tool Corp.*, 714 F.Supp.2d 863, 875–76 (N.D. Ill. 2010) (requiring "damage to the computer or computer system" before a plaintiff can prove "loss" under the CFAA). The Seventh Circuit has not addressed this question.

Plaintiff alleges Kutka caused it "damage" under the CFAA by engaging in spoliation and installing a program called CCleaner on one of PolyOne's protected computers. [36] at 5. The amended complaint states only that, "On February 27, 2015, a jury in the Northern District of Ohio returned a verdict finding Kutka liable for breach of his Employee Agreement with PolyOne, breach of his duty of loyalty to

---

[1] The loss must be at least $5,000 in value for plaintiff to maintain a civil action under the statute. 18 U.S.C. § 1030(g). The other factors of § 1030(c)(4)(A)(i) are not at issue here.

12

PolyOne, and spoliation of evidence." [22] ¶ 64. The pleading does not mention spoliation anywhere else, giving no indication of how, if at all, the conduct underlying the spoliation verdict related to Kutka's downloading of plaintiff's confidential trade secrets in 2013. Plaintiff alleges nothing to support an inference that Kutka's litigation misconduct "impaired the integrity or availability of data, a program, a system, or information" in connection with the downloads. *See* 18 U.S.C. § 1030(e)(8). Likewise, although plaintiff does allege Kutka installed a document destruction program called CCleaner, it never alleges that Kutka actually used it to destroy any files. This case thus differs from those in which courts found the use of document destruction programs to constitute "damage" under the CFAA. *See, e.g.*, *International Airport Centers LLC v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006); *Mobile Mar, Inc. v. Pakosz*, 2011 WL 3898032 at *1 (N.D. Ill. Sept. 6, 2011). Accordingly, plaintiff has not pled "damage."

Still, the CFAA claim may survive if plaintiff sufficiently alleged "loss." Plaintiff says it satisfied this requirement with the following language: "As a result of Kutka's unauthorized access, PolyOne conducted internal examinations of its computer systems and has hired an external computer forensic consultant to assess what files were taken, an assessment of whether files were deleted, whether computer 'wiping' software was used, and Kutka's usage history of PolyOne's computers." [22] ¶ 103. Plaintiff also alleges that it suffered losses in excess of $5,000. *Id*. at ¶ 104.

"Loss" includes the cost of "responding to an offense," and the alleged offense here was Kutka's unauthorized access of PolyOne's computers. *See* 18 U.S.C. § 1030(a)(2). I am persuaded that at the pleadings stage, it is sufficient for a plaintiff to allege that it responded to an offense by examining its computer systems and it incurred at least $5,000 in costs associated with that examination. *See Motorola v. Lemko Corp.*, 609 F.Supp.2d 760, 768 (N.D. Ill. 2009); *Farmers Ins. Exchange*, 823 F.Supp.2d at 854. The facts may belie plaintiff's claim—e.g., plaintiff may have hired its consultant only for litigation—(and there are categories within the statutory definition of loss that do require impairment to data or interruption of service, allegations that are lacking here), but the complaint adequately puts defendants on notice as to both the facts and legal theory plaintiff intends to prove.

Defendants argue for the first time in their reply brief that "[w]ithout direct allegations of conduct that Defendants violated [the] CFAA, there is no civil claim under [the] CFAA." [38] at 8. But the case on which defendants rely did not involve a civil conspiracy claim or allegations that the employee violated the CFAA in furtherance of a conspiracy with the new employer. *See Sysco Corp. v. Katz*, 2013 WL 5519411 at *3 (N.D. Ill. Oct. 3, 2013). More to the point, plaintiff has not had an opportunity to respond to this argument so I decline to dismiss Count V on that basis.

Finally, defendants say it was insufficient for plaintiff to generally plead (1) that it incurred more than $5,000 in losses, and (2) the tasks its consultant performed. However, taking paragraphs 103 and 104 together, it is clear that

14

plaintiff alleges it spent more than $5,000 on a consultant who "asses[ed] what files were taken, . . . whether files were deleted, whether computer 'wiping' software was used, and Kutka's usage history of PolyOne's computers." [22] ¶¶ 103–04. These allegations suffice.

On Count V, defendants' motion to dismiss is denied.

### 2. Civil Conspiracy

In Count IV, plaintiff claims defendants committed the tort of civil conspiracy by agreeing with Kutka "to establish Polymax in the United States and allow it to unfairly compete with PolyOne through unlawful means." [22] ¶ 92. More specifically, plaintiff alleges that "Defendants and Kutka orchestrated a scheme where Kutka would breach his duty of loyalty to PolyOne, be hired by Polymax in violation of his non-compete obligations with PolyOne, Kutka would stand aside and not inform PolyOne of Polymax's efforts to solicit and obtain PolyOne customers, and Kutka would provide confidential information to Polymax regarding PolyOne's products and customers." *Id*. Plaintiff claims defendants also undertook overt acts in furtherance of this conspiracy, including planning the creation of Polymax in the United States, encouraging Kutka to breach his duty of loyalty, and communicating with Kutka about obtaining business from the customer it eventually stole. *Id*. ¶ 95.

To state a claim for civil conspiracy, a plaintiff must allege "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to

15

the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Defendants offer two arguments for dismissing this count. First, citing *Borsellino*, they say plaintiff failed to plead conspiracy with the particularity required by Rule 9(b). However, conspiracy need not be pled with particularity. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990). Rule 9(b) applied in *Borsellino*, not because a conspiracy was alleged, but because a conspiracy to commit fraud was. *See Borsellino*, 477 F.3d at 509. No fraud is alleged here.

Defendant next argues that under Illinois law, there can be no civil conspiracy between a principal and an agent. *See Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 24 (1998). Since plaintiff alleges an agency relationship between Kutka and defendants, the argument goes, the civil conspiracy claim fails as a matter of law. Defendants acknowledge that plaintiff "fail[ed] to allege when the damage occurred and whether [Kutka] was an agent or employee of Polymax TPE at such times." [28] at 9. Although this admission would seem to dispose of defendants' argument by permitting an inference that Kutka was not plaintiff's agent or employee, defendants suggest that since the CFAA claim invokes the *Pinkerton* theory of liability, *see Pinkerton v. United States*, 328 U.S. 640 (1946), it necessarily follows that plaintiff's amended complaint pleads an agency relationship.

*Pinkerton* liability is a type of vicarious liability based on agency principles, *see United States v. Manzella*, 791 F.2d 1263, 1267 (7th Cir. 1986), but a complaint

16

that alludes to a *Pinkerton* theory does not necessarily plead an intracorporate conspiracy that is prohibited by Illinois law. In theory, an individual who is not employed by a company as its agent can conspire with that company and then, as a matter of conspiracy law, become vicariously liable for the acts committed by co-conspirators.[2] If Kutka was defendants' agent, then the civil conspiracy claim will fail. At this stage, however, the allegations of the complaint do not preclude the possibility that a conspiracy existed at a time when Kutka was not defendants' agent. Defendants are sufficiently on notice that plaintiffs are pursuing a theory of conspiracy, one that necessarily will require plaintiff to prove that Kutka was not defendants' agent (in the corporate sense).

Defendants point to a number of other allegations they believe show that Kutka was defendants' agent. But, as they initially noted, it is not apparent from the face of the amended complaint that Kutka was their agent at the time the alleged overt acts occurred. Construing this ambiguity in the light most favorable to plaintiff, dismissal is unwarranted.

On Count IV, defendants' motion to dismiss is denied.

---

[2] This assumes that *Pinkerton* liability is an available theory of liability for civil actions—under Illinois law, the civil conspiracy tort effectively accomplishes the same result by requiring some tortious overt act to have been committed in furtherance of the conspiracy. *See Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 63 (2009) (the gist of a civil conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement). Extending *Pinkerton* to civil causes of action may be unnecessary.

## IV. Conclusion

Defendant Nantong Polymax's motion to dismiss for improper service [24] is denied. Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim [27] is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/25/15