# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| POLYONE CORPORATION, | ) | |
| Plaintiff, | ) | No. 14 C 10369 |
| | ) | |
| v. | ) | Judge Manish S. Shah |
| | ) | |
| YUN MARTIN LU, et al. | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Defendants Thomas Castile, Yun Martin Lu, Nantong Polymax Elastomer Technology Co. Ltd., and Polymax Thermoplastic Elastomers LLC moved to compel discovery responses (Defs.' Mot. to Compel) [dkt 81] and for a protective order (Defs.' Mot. for Protective Order) [dkt 86]. Plaintiff PolyOne Corporation ("PolyOne") also moved to compel document production. (Pl.'s Mot.) [Dkt 102.] The parties filed a joint statement addressing all outstanding discovery matters on November 2, 2015 [dkt 127], and further narrowed the discovery issues at a hearing on November 17, 2015 [dkt 129]. This opinion addresses the parties' motions. To expedite discovery, some of these rulings were announced at a hearing on December 16, 2015 [dkt 130].

## BACKGROUND

This lawsuit concerns disputed events surrounding the actions of PolyOne/GLS's former employee Joseph Kutka in connection with defendants' effort to obtain a contract with a company named Nomacorc. (*See generally* Defs' Ans. to Amend. Compl.) [dkt 48]; (Pl.'s Ans. to

Counterclaims) [dkt 59]. The facts will be discussed only as necessary to address the discovery issues.

PolyOne is a provider of specialized polymer materials, services, and solutions. GLS, with which it merged in 2008, specializes in thermoplastic elastomers (TPEs), which are a type of soft plastic used, for example, in synthetic wine corks. (Defs' Ans. to Amend. Compl. ¶¶ 12-13.) GLS previously employed Lu and Castile. (*Id.* ¶ 14.) Polymax Nantong is a China-based manufacturer and compounder of TPEs. (*Id.* ¶ 2.) Lu and Xu formed the company in China in 2005, moved it to Nantong in 2008, and renamed it Polymax Nantong. (*Id.* ¶ 16.) Polymax Thermoplastic Elastomers LLC is an American sister company of Polymax Nantong. (*Id.* ¶ 3.) Its members include Lu, Castile, and Xu. (*Id.* ¶¶ 4-6.) (Those defendants are collectively referred to as "Polymax.")[1] Polymax manufactures, distributes, and sells TPEs in direct competition with PolyOne. (*Id.* ¶ 3.)

In 2008, Lu had contacts with Kutka, who was then a PolyOne/GLS employee involved with TPE formulation and who had been Lu's boss when Lu was employed at GLS until 2001. (*Id.* ¶ 18.) Kutka advised that he was interested in leaving PolyOne, and they discussed the possibility of doing business with Polymax Nantong selling TPE products in the United States. (*Id.*) Kutka was under a non-compete agreement with GLS. (*Id.*) In 2009, while Kutka was in China for a conference, he met with Lu and toured the Polymax Nantong facility. (*Id.* ¶ 21.) PolyOne alleges – and Polymax denies – that in 2010 Kutka began assisting Polymax in the United States by, among other things, recruiting talent. (*Id.* ¶ 22.)

---

[1] Defendant Tie-Liang Xu ("Tyler Xu") is proceeding pro se and did not participate in the motions.

In 2010, Nomacorc regained the right to utilize SEBS-based TPE materials in its product lines after a patent dispute had forced it not to do so for years. (*Id*. ¶ 24.)[2] GLS had previously provided TPEs to Nomacorc before the patent dispute. (*Id.*) After the dispute ended, Nomacorc sought to qualify vendors to provide SEBS-based TPEs for its synthetic cork products, and was considering PolyOne and Polymax Nantong. (*Id.*) In late 2011 or early 2012, Polymax Nantong started making TPE pellets in China for Nomacorc, and in early 2015, Polymax started making TPE pellets in the United States for Nomacorc. (*Id.* ¶ 35.) Kutka officially accepted a position with Polymax in November 2013, before Polymax started manufacturing the TPEs in the United States for Nomacorc. (*Id.* ¶ 61.)

PolyOne filed a lawsuit against Kutka in the Northern District of Ohio in December 2013. (Defs.' Brief Supp. Mot. Compel at 4.) [Dkt 82.] On February 27, 2015, a jury found Kutka liable for breaching his employment agreement with PolyOne, for breaching his duty of loyalty to PolyOne, and for spoliation of evidence. (Defs' Ans. to Amend. Compl. ¶ 64.) On November 2, 2015, the court in the the Ohio lawsuit entered an agreed Permanent Injunction and Final Judgment in which Kutka agreed to be enjoined from employment by Polymax or "any further dealings or communications with the Polymax Defendants about any topic dealing with their business." (Notice Agreed Entry, Ex. 1.) [Dkt 131.]

PolyOne filed this case against Polymax on December 26, 2014. (Compl.) [Dkt 1.] PolyOne claims here that wrongful actions led to Polymax obtaining the Nomacorc business. (Defs.' Ans. to Amend. Compl. ¶¶ 12-64.) PolyOne specifically claims misappropriation of trade secrets,

---

[2] PolyOne refers to the materials concerned here as TPE-based, while Polymax refers to SEBS-based materials. Polymax later clarifies that the pellets it ultimately produced for Nomacorc were "SEBS-based TPE pellets." (Defs.' Brief Supp. Mot. Compel at 2.) [Dkt 82.]

tortious interference with a contract, tortious interference with prospective relations, conspiracy, and violation of the Computer Fraud and Abuse Act. (*Id.* ¶¶ 65-106.) Polymax counterclaims for declaratory judgment, commercial disparagement of a business, and violation of the Illinois Unfair and Deceptive Trade Practices Act. (Pl.'s Ans. to Counterclaims ¶¶ 76-114.)

PolyOne's trade secret misappropriation claim alleges that in 2011 Castile induced Nomacorc to give PolyOne's TPE pellets to Polymax in spite of Nomacorc's confidentiality agreement with PolyOne. (Am. Compl. ¶¶ 30, 67-72) [Dkt 22.] PolyOne alleges Polymax used the pellets to develop the formula that it ultimately sold to Nomacorc in competition with PolyOne. (*Id.* ¶ 71) Defendants answer that Nomacorc did not provide Polymax Nantong with any of PolyOne/GLS's SEBS-based pellets or any materials that PolyOne had developed for the project for which PolyOne, Polymax and others were competing. (Defs.' Answer Am. Comp. ¶¶ 30, 67-72.) Polymax states that it received TPV-based pellets that were provided to Nomacorc by another company, and some TPO-based pellets for a lower-end market product. (*Id.*)

After the discovery motions were filed and several hearings had been held, the parties met at the court's direction to narrow the critical discovery issues. The parties then filed a Joint Statement on Outstanding Discovery Matters. [Dkt 127.] At a hearing on November 17, the issues were further narrowed and the parties identified the top priority discovery requests. This ruling resolves the outstanding discovery disputes.


## LEGAL STANDARD

When this case was filed, Rule 26(b)(1) described the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense." Under that version of Rule

26, the court could, for good cause, expand the scope to "any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Effective December 1, 2015, Rule 26(b)(1) was amended to eliminate the court's discretion to expand discovery to the subject matter of the action and to add a requirement that discovery be "proportional" to various factors.[3] The new version is applicable to pending actions to the extent just and practicable. 28 U.S.C. § 2074(a); Sup. Ct. Order April 29, 2015.

**DISCUSSION**

**I.    Polymax's Motion to Compel**

In the briefing and hearings on its Motion to Compel, Polymax identified several disputes of particular significance. Those are addressed first.

**Polymax's interrogatories 4 and 5:  Information regarding testing data and results obtained from PolyOne's testing of Polymax's pellets.**

Polymax's Interrogatory 4 seeks the identity of all pellets, plastics, plaques, samples or manufactured items in Polyone's possession that were manufactured or supplied by Polymax or contain materials manufactured by Polymax. (Defs.' Mot. Compel, Ex A.) Polymax's Interrogatory 5 seeks types, dates, and results from any testing or analysis of any Polymax pellets, plastics,

---

[3] Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolvig the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A similar to the limitation was previously set out in Rule 26(b)(2)(c).

plaques, samples or manufactured items that has been done by or on behalf of PolyOne, including the persons or entities performing the testing. (*Id.*)

In 2014, as part of pretrial discovery in the Ohio lawsuit, Nomacorc gave PolyOne's attorneys the SEBS-based pellets and corks that had been manufactured by Polymax for Nomacorc. (Defs' Brief at 5; Defs.' Mot. Compel, Ex. H, Pl.'s Resp. Interrog. 4.) According to PolyOne, Normacorc marked the pellets and corks "attorneys' eyes only." (*Id.*) PolyOne objects to producing any information about any testing, citing Fed. R. Civ. P. 26(b)(4)(D).[4] PolyOne states that "a consultant has been retained in anticipation of litigation to prepare for trial who is not expected to be called as a witness at trial." (Defs.' Mot. Compel, Ex. H, Pl.'s Resp. Interrog. 5.) PolyOne has refused to state whether any testing has been done.

The parties focus on whether the PolyOne must disclose the results of any testing that has been done. That focus skips several steps. The first step is Interrogatory 4. The court sees no protection afforded by Rule 26(b)(4)(D) to the information sought in that interrogatory. It is undisputed that PolyOne's attorneys obtained materials from Normacorc in the Ohio litigation. Even if the attorneys turned those materials over to a consultant for testing, that fact would not insulate PolyOne from the obligation to disclose whether it has obtained materials relevant to this lawsuit.

---

[5] Rule 26(b)(4)(D) states:

Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Discoverable information is not shielded by Rule 26(b)(4)(D) simply because it is shared with a consulting expert. Polymax's motion to compel is granted as to Interrogatory 4.

Turning to Interrogatory 5, the parties' arguments focus on whether the results of testing are discoverable if the testing is done by a non-testifying expert. Polymax argues that "a chemical deformulation is a . . . scientifically objective and mechanized test, it is not an 'opinion' of a human expert consultant." (Defs.' Brief at 9.) PolyOne, on the other hand, takes the view that it is not required to provide Polymax with "any information regarding its non-testifying expert's activities." (Pl.'s Resp. at 7.) [Dkt 91.]

The protection is not as broad as PolyOne argues. The threshold question is whether PolyOne has had any tests done on the materials produced by Nomacorc. That information does not implicate the "facts known or opinions held by" its consultant. It only reveals what PolyOne has directed be done with the materials it received in discovery from Nomacorc. That the non-testifying expert might also know that a test has been run does not, of itself, protect the fact that the test has been run from disclosure.

The court will grant the motion in part now and deny the balance without prejudice, reserving that issue for later ruling. The motion to compel is granted as to Interrogatory 5, limited as follows: PolyOne shall disclose whether any testing or analysis of any Polymax pellets, plastics, plaques, samples or manufactured items that has been done by or on behalf of PolyOne, and if so, what tests or analysis, and when. Polymax's request for the results of any testing is denied without prejudice. Polymax may file a further motion addressing that issue if the answer to Interrogatory 5 discloses that any have been done.

**Polymax's document request 51: All communications and documents related to Phil Houston's meeting with Kutka without the presence of counsel.**

The Ohio lawsuit ended with a jury verdict against Kutka in February 2015. It is undisputed that, on July 1, 2015, Kutka had a lengthy *ex parte* meeting with Phil Houston, a consultant hired by PolyOne whom Polymax describes as an expert on lie detection. (Defs.' Brief at 13.) According to PolyOne, the subject was Kutka's use and retention of PolyOne information. Counsel representing Kutka in the Ohio case apparently authorized the *ex parte* meeting as a "settlement communication," although Polymax's counsel in this case was not informed and Kutka was then a Polymax employee. (*Id.*) Polymax requests communications and documents surrounding that meeting, and PolyOne objects based on Rule 26(b)(4)(D). (*Id.* at 12.) In the joint discovery statement, PolyOne also objects because Kutka's Ohio counsel suggested and authorized the meeting. (Joint Stmt. at 14.)

PolyOne's contention that the information is protected from discovery by Fed. R. Evid. 408 as part of settlement negotiations ignores the limits of that rule.[5] The protection of Rule 408 applies only to litigation about the claim that was the subject of the discussion. There is no suggestion that Kutka or his lawyer in the Ohio case had any authority or were even attempting to settle the claims

---

[5] Fed. R. Evid. 408 "Compromise Offers and Negotiations" provides, in relevant part:

(a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or a statement made during compromise negotiations about the claim [except certain circumstances in criminal cases].

at issue in this case. Additionally, Rule 408 does not create a category of documents that is off limits from discovery. Rather, Rule 408 creates a narrow exclusion from admissibility as evidence. Rule 408 has no application here.

PolyOne has the burden of establishing that Rule 26(b)(4)(D) protects the information from disclosure. *See McNally Tunneling Corp. v. City of Evanston*, No. 00 C 6979, 2002 WL 59115 at *2 (N.D. Ill. Jan. 14, 2002). PolyOne therefore has the burden of showing that Houston is a non-testifying expert who was retained to conduct the interview in anticipation of litigation or to prepare for trial. PolyOne has provided no factual material to support its burden that Houston's work is protected by Rule 26(b)(4)(D).

Its assertion that Kutka's Ohio lawyer approved the interview as part of settlement discussions in that case and that the interview related only to Kutka's use and retention of PolyOne's information undercuts the argument that the work was done to prepare for trial or in anticipation of this lawsuit. What was the purpose of the interview: settlement of the Ohio case or preparation for this case?

Moreover, the argument that PolyOne's agent's interview with Kutka was to prepare for trial in this lawsuit raises serious ethical questions, as Polymax points out. At the time of the interview, Kutka was a vice-president of Polymax, and part of PolyOne's theory of this case is that Polymax has liability for his actions. Illinois Rule of Professional Conduct 4.2 (which is identical to the ABA Model Rule) forbids such an interview unless Polymax's – not Kutka's – counsel consents, which

did not happen.[6] Kutka's Ohio lawyer has no appearance in this case and there is no evidence that he has authority to consent to the interview with respect to statements about claims in this litigation.

If it were assumed that Rule 26(b)(4)(D) has any application to that interview, the court finds that exceptional circumstances exist to justify production of any materials relating to the interview, arising from the fact that the interview was of Polymax's then-vice-president without its knowledge or consent. Rule 26(b)(3)(C) supports that conclusion, providing that a party or person may obtain on request the person's own previous statement about the action or its subject matter. In this lawsuit where PolyOne is seeking to hold Polymax liable for actions by Kutka, Polymax is entitled to any statements by Kutka.

Accordingly, Polymax's motion to compel is granted as to all communications and documents related to Phil Houston's interview with Kutka.


**Polymax's Joint Statement items 1 and 2: Development documents for Elastalloy 4167, the alleged precursor to 310-112, and the TPO based formula.**

PolyOne states that it has provided the formula and formula histories for the Nomacorc formulas that are at issue and objects to any further discovery on those formulas. (Joint Stmt at 12.) Polymax has provided the court with no information about the relevance of these requests to the

---

[6] Rule 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

Comment [7] clarifies that in the case of a represented organization, Rule 4.2 prohibits communications with constituents of the organization who work with the organization's lawyers on the matter and whose acts or omissions may be imputed to the organization. If the constituent is represented by his or her own counsel in that matter, that counsel's consent is sufficient, but Kutka is not represented by separate counsel in this lawsuit.

issues in this case, and the court lacks the factual basis to order this production.  Polymax's motion is denied without prejudice as to these requests.

**Polymax's Joint Statement item 3: Information or files from Polyone's computer systems reflecting any access, copying, or printing by Kutka, including native format versions of the documents it claims Kutka misappropriated.**

This material is relevant and discoverable.  Polymax's motion is granted as to this request. PolyOne must produce any documents, including any electronic documents or information from its own computer system, reflecting any access by Kutka to files, formulas, or other information that PolyOne claims was misappropriated, stolen, or improperly transferred by Kutka from PolyOne. PolyOne shall serve a supplemental response stating that all such documents and information have been produced.  At the November 17 hearing, PolyOne's counsel stated that PolyOne has no data on its internal system to reflect when anyone, including Kutka, accessed any particular formula.  (Tr. Nov. 17, 2015 at 10-11.)  [Dkt 136.]  If there are no such documents or information on PolyOne's computer system, the response shall so state.

**Polymax's Joint Statement item 4 and document requests 22-26:  Document reflecting damage to any computer or impairment to the integrity of PolyOne's data on its computer system that PolyOne will use to support its claim under the Computer Fraud and Abuse Act.**

The motion is granted as to these requests.  PolyOne shall produce all such documents and serve a supplemental response confirming that all responsive documents have been produced.

**Polymax's Joint Statement item 5 and document request 5: Documents reflecting the dropping of the Computer Fraud and Abuse Act claim against Kutka in the Ohio lawsuit.**

PolyOne does not object to this request, rather it states that it has already produced the pleadings in the Ohio lawsuit that address the topic and "will supplement its expert reports." (Joint Stmt. at 12.) It is not clear whether that means there are additional responsive documents. If there are any further responsive documents, PolyOne must produce them. PolyOne shall serve a supplemental response confirming that all responsive documents have been produced.

**Polymax's Joint Statement item 6 and document request 11: Documents reflecting whether others in the industry use any of the components PolyOne claims as a trade secret.**

PolyOne states that it is not claiming that any given component is a trade secret; instead, the trade secret is the specific prercentage and mix of components. (Joint Stmt. at 13.) Polymax's motion as to this request is granted as follows: PolyOne must produce all documents reflecting whether others in the industry use the specific percentage and mix of components that it claims are trade secrets. PolyOne shall serve a supplemental response confirming that all responsive documents have been produced.

**Polymax's Joint Statement item 9 and document request 34: Communications between PolyOne and Nomacorc concerning any alleged breach of non-disclosure and confidentiality agreements.**

PolyOne states that no such documents exist except for a deposition transcript (Joint Stmt. at 13), but its response to Polymax's request states that the request seeks information that PolyOne has already produced in its initial disclosures and that PolyOne will produce responsive documents

on a rolling basis.  (Defs.' Mot. Compel, Ex. G at 14.)  Polymax's motion is granted as to this request.  PolyOne shall serve a supplemental response confirming that all responsive documents have been produced.

**Polymax's Joint Statement items 9-10 and document requests 34-37:  Documents and communications reflecting discussions by or among PolyOne regarding the defendants, the litigation, or the claims in this case.**

PolyOne has agreed to produce non-privileged responsive documents.  PolyOne shall serve a supplemental response confirming that all responsive documents have been produced. As to any documents that are withheld on the basis of privilege, the parties will follow the directions in this order.

**Polymax's Joint Statement item 11 and document request 39: Documents concerning PolyOne's allegations that certain business or product lines have been disrupted or damaged.**

PolyOne states that it has produced documents relating to Nomacorc and will conduct an investigation to see if any additional responsive documents exist.  Polymax's motion is granted as to this request.  PolyOne shall serve a supplemental response confirming that all responsive documents have been produced.

**Polymax's Joint Statement item 12 and document request 41: All documents created and sent by Kutka, including email, from January 1, 2008 to present.**

Polymax states that this request is relevant to PolyOne's claims that Kutka was involved in all of their TPE trade secrets and was involved with various product lines. PolyOne objects that this

request is overbroad and states that it has produced Kutka's emails that are relevant to the claims at issue. (Joint Stmt. at 14.) The motion to compel a further response to this request is denied without prejudice. The parties are directed to confer further about this request to see if they can reach agreement about the proper scope of production in light of the issues in the case.

**Polymax's Joint Statement item 13 and document request 45: Documents reflecting that GLS obtained TPV-based raw materials from DSM Elastomers.**

PolyOne argues that this is not relevant to any issue because it stipulates that GLS and DSM Elastomers, as part of a joint venture, once provided TPV-based product to Nomacorc, and that after the joint venture ended, DSM Elastomers continued to provide TPV-based product to Nomacorc. Polymax's motion to compel a further response to this request is denied without prejudice.

**Polymax's Joint Statement item 14 and document request 46: Documents related to Nomacorc purchase orders.**

PolyOne states that it has already produced summaries of its sales and financial information for Nomacorc and that it is burdensome and unnecessary for PolyOne to produce all purchase orders. Polymax states that the purchase orders are necessary discovery on the damage claims. In order for PolyOne to use summaries of its sales information as evidence, it must produce the underlying documents for Polymax's inspection. Fed. R. Evid. 1006. The motion is granted as to this request.

**Polymax's Joint Statement item 14 and document request 47: Documents relating to Nomacorc's patent dispute with Supreme Corq.**

PolyOne states that it has no documents that are not publically available. Polymax's motion is denied without prejudice as to this request.

## II.     PolyOne's Motion to Compel

An overriding dispute between the parties relates to the breadth of PolyOne's document requests. PolyOne originally requested, for example, that Polymax produce "[a]ll documents and communications relating to [Polymax's] sales and financial information concerning [Polymax's] business in the United States." (Pl.'s Brief Supp. Mot. Compel, Ex. A at 13.) [Dkt 103.] That is patently overbroad. Other requests were similar, for example, "[a]ll documents and communications relating to [Polymax's] business strategy plans, including but not limited to drafts and final versions of marketing materials." (*Id*.) Not surprisingly, Polymax objects. (*Id.*)

PolyOne narrowed the requests to nine customers and six product lines. (Joint Stmt. at 6-7.) Polymax continues to object, observing that PolyOne and Polymax are competitors and PolyOne has not identified any basis to believe that Polymax has misappropriated any sales from PolyOne other than the allegations about the Nomacorc wine cork skins. (*Id.* at 7.)

The court agrees that such requests exceed the proper scope of discovery. As justification, PolyOne asserts that Kutka, a top scientist who had worked for PolyOne on products for these customers, was hired by Polymax at the same time that Polymax targeted the customers. (Joint Stmt. at 6-7.) That is not enough to state a claim. This case is extraordinary in that it follows a lawsuit and trial relating to Kutka's activities, yet PolyOne has not alleged any improper activity in connection with any customers except Nomacorc.

PolyOne argues that "[t]his case is not limited to Nomacorc – this was a wholesale theft of massive amounts of information that Kutka misappropriated and hid when he joined Polymax." (Joint Stmt at 10.)  That may be PolyOne's view of the subject of the lawsuit, but even assuming for the sake of argument that it appropriately describes the *subject* of the lawsuit, Rule 26(b)(1) does not permit the court to compel discovery about the subject of the lawsuit.  Discovery is limited to *claims and defenses* in the lawsuit.  Under Rule 26(b)(1), the court cannot authorize a wholesale examination of a competitor's business  – even limited to nine customers and six product lines – on the basis of speculation that something improper might have occurred.

Notably, when responding to Polymax's request for documents, PolyOne states that it had provided "the formulas and formula histories for its *Nomacorc formulas that are at issue in this case* . . . and objects to any further discovery on these formulas."  (*Id*. at 12 (emphasis added).)

At the hearing on December 16, 2015, PolyOne was allowed additional time to submit any factual material it might have to support its requests for documents regarding Polymax's relationships with customers other than Nomacorc.  (Order, Dec. 16, 2015.)  PolyOne later asked for and was granted additional time for its submission, and Polymax was given additional time to reply. (Order, December 23, 2016.)  [Dkt 137.]  In the interest of not holding up discovery for another month,  the court is ruling on the pending discovery disputes on the basis of what is currently before the court.  If the additional submissions show that a broader scope of discovery is justified, PolyOne may move for reconsideration on that basis.

**PolyOne's Joint Statement item 1: Documents and communications relating to formulas Polymax developed for Nomacorc in 2011.**

PolyOne seeks formulas Polymax developed for Nomacorc in 2011, including any lab notebooks showing the development of formulas. In the Joint Statement, PolyOne adds a request for information about any subsequent modifications of those formulas.

The formula that is at issue here is the formula developed for the pellets sold to Nomacorc in 2011 for use in wine cork skins. PolyOne alleges that Polymax's formula was based on PolyOne's work. Polymax denies that, but PolyOne's request for that formula and for the lab notebooks and emails relating to the development of that formula – the formula used in the wine cork skins – is within the scope of discovery. To the extent that Polymax's request seeks more than that – other formulas developed for Nomacorc or modifications to the formula for the 2011 pellets – the request is denied as outside the proper scope of discovery here. The court would reach the same conclusion under either the old or new formulation of Rule 26(b)(1).

Polymax points out that its formulas and lab notebooks are its trade secrets. Unlike PolyOne, which intentionally put its trade secrets at issue by bringing this litigation, Polymax is being ordered to give its trade secret information to a competitor not through its own decision to engage in litigation but because of the discovery rules. Accordingly, the documents Polymax produces in response to this request will be held by PolyOne as "Highly Confidential Information" pursuant to the Confidentiality Order [dkt 75] previously entered.

Polymax asks that its production of formulas and customer information be delayed until PolyOne discloses a prima facie case of misappropriation. (Def.'s Mot. for Protective Order at 5.) That request is denied. Although the court agrees that many of PolyOne's discovery requests are overly broad, the proper course is not to make discovery one-sided, but to narrow the scope of

discovery to what is properly relevant to the claims and defenses and proportional to the factors set out in Rule 26(b)(1).

**PolyOne's Joint Statement item 2: Documents showing the testing of pellets that defendants received from Nomacorc in 2011.**

Polymax's objection to that request states that Nomacorc provided a material sample to Polymax Nantong consisting of TPV-based pellets from the company unrelated to PolyOne that had been supplying Nomacorc. (Pl.'s Brief, Ex. A at 4.) Polymax states that Nomacorc never provided Polymax with PolyOne's SEBS-based pellets. (*Id*. at 5.)

Nonetheless, in the Joint Statement, Polymax states that Nomacorc provided those test results and Polymax will also provide them. (Joint Stmt. at 5.) At the November 17 hearing, PolyOne objected that Polymax has not produced test results that PolyOne expected to see and so PolyOne believes there are more test results that Polomax has not provided. (Tr. Nov. 17, 2015 at 25.) Polymax responded that it did not perform tests relating to deformulation or identification of the components of the pellets and thus, there are no such documents to produce. (*Id.*) Polymax shall serve a supplemental response to the request confirming that all such documents have been produced.

**PolyOne's Joint Statement items 3 and 9: Emails and other communication with Nomacorc during the development and testing of formulas and products developed by defendants in 2011.**

Polymax has agreed to produce all documents and communications with Nomacorc for 2011. (Joint Stmt. at 5-6.) Polymax shall serve a supplemental response to the request confirming that all

such documents have been produced.    In the Joint Statement, PolyOne added a request for documents relating to any modification or alteration of the formulas since 2011.  (Joint Stmt. at 5.) For the reasons set out above, that additional request is denied.

**PolyOne's Joint Statement item 4: Communications by and among Kutka, Lu, Castile, and Xu relating to the opportunity to obtain business from Nomacorc**.

As framed by PolyOne, this request is overly broad and beyond the proper scope of discovery, which is limited to the claims and defenses in this lawsuit.  PolyOne and Polymax are competitors; Polymax has the right to seek business from Nomacorc.   Discovery about that effort is appropriate only to the extent it is relevant to the claims and defenses in this lawsuit, which relate to Polymax's effort to provide Nomacorc with pellets for wine cork skins.  PolyOne's motion is granted as to any communications relating to the opportunity to obtain business from Nomacorc that resulted in Polymax selling TPE-based pellets to Nomacorc in 2011, which PolyOne alleges were improperly obtained by Kutka.  To the extent that PolyOne seeks communications regarding other business relationships with Nomacorc, the motion is denied as beyond the scope of the claims and defenses in this case.

**PolyOne's Joint Statement item 5:  Documents showing what was discussed on Skype calls by and among Kutka and the other defendants in March 2011.**

Polymax states that responsive documents have been produced. Polymax shall serve  a supplemental response to the request confirming that all such documents have been produced.

**PolyOne's Joint Statement item 6:  Telephone records of Lu and Castile showing calls with or to Kutka in 2011.**

Polymax states that responsive documents have been produced during discovery in the Ohio lawsuit.  Polymax shall serve a supplemental response to the request confirming that all such documents have been produced.

**PolyOne's Joint Statement item 19:  Emails and other written communications with Kutka about PolyOne, its formulas, products, customers, and/or PolyOne trade secrets or confidential documents.**

Given the extensive discovery in the Ohio lawsuit, it is hard to believe there is anything left for Polymax to produce in this category, but Polymax agrees that if there is anything further, it will be produced.  Polymax shall serve a supplemental response to this request confirming that all such documents have been produced.

**PolyOne's Joint Statement item 7: Sales and cost reports showing revenue and profits from Nomacorc business.**

Polymax has said it will produce financial records relating to sales of synthetic wine cork skins.  To the extent PolyOne requests more than that, the motion is denied as outside the scope of relevant discovery.

**PolyOne's Joint Statement item 8:  Communications with Nomacorc about the Ohio lawsuit and this lawsuit.**

Polymax has agreed to provide such documents and communications. Polymax shall serve a supplemental response to the request confirming that all such documents have been produced.

**PolyOne's Joint Statement items 10 and 20:  Communications with Dan Dague and Tony Henry.**

Polymax has agreed to provide such documents and communications. Polymax shall serve a supplemental response to the request confirming that all such documents have been produced.

**PolyOne's Joint Statement items 11-13 and 21:  Information relating to customers other than Nomacorc and information about Polymax's hiring of Bob Banning, a former consultant for GLS.**

These requests are denied as outside the scope of discovery for the reasons stated above. With respect to Banning, PolyOne asserts that he worked as a strategic consultant for PolyOne GLS "for many [unspecified] years" and that Kutka assisted Polymax to recruit Banning to act in a similar capacity for Polymax.  (Joint Stmt. at 9-10.)  PolyOne's Amended Complaint does not allege any wrongful act by Banning or by Polymax in retaining Banning, let alone that any sales were misappropriated from PolyOne.  (*See* Am. Compl. ¶¶ 44-45.)  Rather, the allegation is that Kutka acted wrongfully in assisting Polymax while Kutka was still employed by PolyOne.  There is nothing to support the discovery PolyOne seeks into Polymax's other customers and product lines.

**PolyOne's Joint Statement item 14: Documents showing ownership of Polymax and Polymax Nantong.**

Polymax has agreed to provide documents reflecting the identity of the members, shareholders, or owners of Polymax and Polymax Nantong.  (Joint Stmt. at 4.)  Polymax shall serve a supplemental response to the request confirming that such documents have been produced.

**PolyOne's Joint Statement item 15: All documents relating to Polymax's manufacturing and product development processes.**

PolyOne seeks information about Polymax's manufacturing processes, including an inspection of Polymax's Chicago area facility. (Joint Stmt. at 8.) The only asserted justification for such an expansive request regarding a competitor's processes is that Polymax hired Kutka as the Director of Operations and he helped set up Polymax's manufacturing processes in the United States. (*Id*.) This request is well outside the scope of discovery here. It is denied.

**PolyOne's Joint Statement item 22: documents relating to the purchase of equipment from Supreme Corq LLC.**

Polymax has agreed to provide the purchase contract for the equipment that was purchased. (Joint Stmt. at 9.) It is not clear whether or why PolyOne needs more than that contract. To the extent that PolyOne seeks additional discovery on this topic, the request is denied without prejudice to PolyOne demonstrating what and why it needs more. Polymax shall serve a supplemental response confirming that the agreement has been produced.

**PolyOne's Joint Statement item 23: Computers, flash drives, and devices used by Kutka, Lu, Xu, and Castile.**

In the Joint Statement, PolyOne narrowed this request to " information on computers, flash drives or hard drives used by Lu, Kutka, X[u] and Castile relating to any PolyOne files that Kutka provided to Defendants." (Joint Stmt. at 10.) Polymax objects on the ground that PolyOne has had Kutka's computers, flash drives, and storage devices, but has not found any evidence of information transfer to any of the defendants in this case. (*Id.*) Polymax also states that the request is extremely

broad and would require Polymax to turn over business and proprietary information. (*Id.*) PolyOne states that there is evidence Kutka downloaded proprietary information, and says that it is willing to work with Polymax in developing a protocol for searching for the information. (*Id.*)

The request is denied without prejudice at this time. The parties have not provided the court with sufficient information about the factual background or about the nature of the electronics at issue. As discussed above, PolyOne's interview with Kutka in July 2015 was on this very topic. That interview should provide both sides with a better understanding of what, if anything, Kutka downloaded and whether any of it was transferred to Polymax. After PolyOne has produced the material Polymax has requested about that interview, counsel for the parties shall confer on this subject. If after that conference, the parties are not able to reach agreement, PolyOne may renew its motion to compel.

### PolyOne's Joint Statement items 24-26: Documents Polymax had prepared by experts or intends to use at trial to support its counterclaims and affirmative defenses.

These requests are redundant of the requirements of the Federal Rules of Civil Procedure. Rule 26(a)(1)(A)(ii) requires each party to disclose the documents it may use to support its claims or defenses. That includes any such documents given to an expert. Rule 26(e) requires "timely" supplementation of any previous disclosure. The schedule for expert discovery has not yet been ordered. The motion is denied as unnecessary with respect to these requests.

**PolyOne's first set of interrogatories.**

As of the filing of the Joint Statement, Polymax had not answered PolyOne's first set of interrogatories. (Joint Stmt. at 11.) Polymax states that it is awaiting the court's ruling on its motion for protective order and determination of the proper scope of discovery. (*Id*.) This opinion resolves those issues. Accordingly, Polymax shall respond to PolyOne's First Set of Interrogatories, but is not required to provide any answers outside the scope of discovery set out in this opinion. This is not a ruling on any other objection that Polymax may make to a specific interrogatory.

**III.    Deadlines for production**

Any supplemental responses to document production, including any responsive documents required by this order, and Polymax's answers to PolyOne's first set of Interrogatories, shall be served and produced by January 15, 2016. If the requesting party seeks to pursue any requests denied without prejudice, counsel for the requesting party shall confer in person or by telephone with counsel for the responding party. If no agreement can be reached, the requesting party may file a renewed motion to compel, but must include in that motion sufficient factual background to provide the court a basis for understanding the importance of the discovery and the basis for the dispute.

Any documents withheld on the basis of attorney-client privilege or work product protection must be identified pursuant to Fed. R. Civ. P. 26(b)(5)(A). The parties are directed to consider the modified privilege log protocol set out on the court's website at www.ilnd.uscourts.gov/home/JUDGES/BROWN/7th Cir Elec Discovery Pilot Pgm Model Privilege CMO_0.pdf. The court will consider the appropriate timing and procedure for serving privilege logs at the status hearing on January 19, 2016.

**CONCLUSION**

For the reasons set out above, Defendants' Motion to Compel [dkt 81], Defendants' Motion for a Protective Order [dkt 86], and Plaintiff's Motion to Compel [dkt 102] are each granted in part, denied in part, and denied in part without prejudice as set out in this Memorandum Opinion and Order. Any supplemental responses to document production, including any responsive documents required by this order, and defendants' answers and objections to plaintiff's first set of interrogatories, shall be served and produced by January 15, 2016.


IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge


December 30, 2015