# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| POLYONE CORPORATION, | ) | CASE NO. 14-CV-10369 |
| | ) | |
| Plaintiff, | ) | Judge Manish S. Shah |
| | ) | |
| vs. | ) | |
| | ) | |
| YUN MARTIN LU, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION PURSUANT TO RULE 59(e)

William M. Gantz (6204397)
DENTONS US LLP
One Beacon Street
Suite 25300
Boston, MA 02108
(617) 235-6816
Bill.gantz@dentons.com

Tony K. Lu (*Pro hac vice*)
DENTONS US LLP
One Beacon Street
Suite 25300
Boston, MA 02108
(617) 235-6816
Tony.lu@dentons.com

Defendants Nantong Polymax Elastomers LLC ("Nantong Polymax") and Polymax Thermoplastic Elastomers LLC ("Polymax TPE"), Yun Martin Lu ("Dr. Lu") and Thomas Castile ("Castile") (collectively "Defendants"), hereby file this renewed Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(b).[1] Defendants are entitled to judgment as a matter of law on Counts II (tortious interference with contract) of the Amended Complaint as set forth below notwithstanding the jury verdict reached on June 3, 2019.

## STANDARD

FED.R.EVID. RULE 50(a) provides the following:

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

"The [Rule 50(a)] standard is whether the evidence presented, combined with all reasonable inferences permissibly drawn, is legally sufficient to support the verdict when viewed in the light most favorable to the nonmovant." *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 767–68 (N.D. Ill. 2002), *aff'd,* 352 F.3d 1111 (7th Cir. 2003). If the Court determines that no rational jury

---

[1] As this Court stated on the record, Defendants' Rule 50(a) motion related to Count I (Trade Secret Misappropriation) and Count IV (Civil Conspiracy) are moot because of the jury verdict in favor of Defendants on Counts I and IV. (Tr. 1848:24-1849:2). This Court previously dismissed Count III (Tortious Interference with Prospective Economic Relations) following Defendants' Rule 50(a) motion.

could return a verdict for Plaintiff, then it should grant Defendants' Rule 50(a) motion. *Id.* (*citing Dadian v. Village of Wilmette,* 269 F.3d 831, 837 (7th Cir. 2001)).

If the Court does not grant a Rule 50(a) Motion, but takes it under advisement, the movant may still file a renewed motion under Rule 50(b). In a Rule 50(b) motion, the court "construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County,* 689 F.3d 655, 659-660 (7th Cir. 2012). The court may, at its discretion, direct the entry of judgment as a matter of law. Fed.R.Civ.P. 50(b)(3).

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT II (TORTIOUS INTERFERENCE WITH CONTRACT).

To support a claim for tortious interference with contractual relations under Illinois law, PolyOne has the burden to prove the following elements: (1) the existence of a valid and enforceable contract; (2) the defendant's awareness of the contractual relation; (3) the defendant's intentional and unjustified inducement of breach of the contract; (4) breach by the other contracting party caused by the defendant's wrongful conduct; and (5) resulting damages. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397–98 (7th Cir. 2003).

Plaintiff cannot establish breach of the employment contract based upon trade secrets because it is preempted by ITSA, and, in any event, the jury found in favor of Defendants on the trade secret claims. *Thomas & Betts Corp. v. Panduit Corp*., 108 F.Supp.2d 968, 971-72 (N.D. Ill. 2000). Kutka's employment contract(s) states the following concerning non-competition during employment: Kutka agreed he would not "promote or assist, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business that competes with the business of PolyOne." (PEX007 ¶4); (PEX221 ¶4). PolyOne has taken the

position and has argued that Kutka breached his employment contract with PolyOne by (1) providing Defendants with information related to the Supreme Corq extruder equipment for auction in March 2011 (PEX093); (2) assisting Defendants with recruiting Rob Banning or Tony Henry to work for Polymax (PEX189); and (3) providing input to Defendants related to the office layout for Polymax TPE. (PEX203). These were the only acts unrelated to alleged trade secret misappropriation identified and argued by Plaintiff and which could conceivably qualify as underlying acts of breach by Kutka which could have been induced by Defendants.

   a. **There Was No Evidence of Damages Proximately Caused by the Alleged Underlying Breaches By Kutka.**

The court should grant this motion for the plain reason that PolyOne did not present any evidence related to damages proximately caused by these alleged breaches of his employment contract. Plaintiff did not present any evidence that Kutka failed to perform his job responsibilities or that PolyOne was otherwise adversely affected as a result of Kutka's breach of contract as induced by any Defendant. PolyOne also did not connect any damages to the evidence that supported Kutka's breach of contract. PolyOne did not lose any opportunity with respect to the public auction of the Supreme Corq equipment. Walter Ripple admitted on cross-examination that PolyOne was not interested in purchasing the Supreme Corq equipment. (Tr. 1200:9-1201-3).

In addition, there was no testimony that Kutka committed any act that could be construed as "recruiting" either Tony Henry or Rob Banning, nor did PolyOne present or claim any specific damages relating to any opportunities to hire or work with Rob Banning or Tony Henry. Kutka attended one dinner at Bobby Deerfield Restaurant on April 25, 2013 where Tony Henry joined. (PEX189; Tr. 344:24-346:15). Defendants never hired Tony Henry. Plaintiff presented no evidence of any loss with respect to Tony Henry, or even that they were interested in hiring Tony

3

Henry, or that Tony Henry provided any advantage or business opportunity to Defendants which rightfully belong to the Plaintiff.

Similarly, Rob Banning is an independent consultant who has the freedom to be employed where he chooses. There was no evidence or testimony otherwise. Plaintiff did not put on any case that Robert Banning provided any information, any advantage or opportunity that belong to Plaintiff or otherwise helped Defendants in any way which damaged Plaintiff. There was no testimony that Rob Banning had anything to do with Nomacorc, nor did Plaintiff put on any testimony that it lost any other piece of business, or any other customer or project in any way for any reason, let alone related to the brief period of time which Polymax TPE worked with Rob Banning. In fact, in response to Defendants' motion in limine no. 2 seeking to bar any evidence of loss or damages related to customers other than Nomacorc, or product line other than wineskin material, Plaintiff reaffirmed that it was not proceeding on any claims related to nine customers and six product lines. (Dkt. No. 408. P. 8).

Finally, Plaintiff presented no evidence of damages proximately caused by Dr. Lu's request for feedback related to office layout from Kutka in July 2013. In response to a July 18, 2013 email from Dr. Lu, Kutka provided feedback related to the Polymax plant layout, which included comments about (1) office space versus cubicle space; (2) expanded cafeteria size; (3) having large windows between plant area and lab; (4) location of shipping/receiving areas; (5) maintenance room size; (6) location of analytical lab; and (7) location of sample storage. (PEX205). There is no evidence at trial that Tom Castile was involved with the communication concerning the office layout. In addition, Plaintiff did not pursue or put on any evidence that Dr.

Lu actually used any of the cursory and high-level observations that Kutka provided, and Plaintiff had no theory or evidence how Kutka's feedback email damaged Plaintiff in any way.[2]

The only evidence associated with damages that PolyOne introduced at trial was related to Kutka's salary and benefits at PolyOne, which was approximately $222,175 per year with benefits according to Kutka's own calculations. (Tr. 271:1-271:25; PEX199). This evidence was admitted, over Defendants' objection, to support Plaintiff's theory for damages based upon Ohio law for breach of the duty of loyalty. (Tr. 1691:9-1692:25). But the jury rejected Plaintiff's civil conspiracy theory to breach the duty of loyalty and found in favor of Defendants, thus foreclosing on possible recovery of Kutka's salary on that basis.

During closing arguments, however, Plaintiff's counsel argued that PolyOne should be entitled to recover Kutka's entire salary for three years, or $630,691, based on the tortious interference with contract claim, and not for breach of duty of loyalty as originally represented. (Tr. 1786:19-1787:10). The jury apparently accepted this argument, but awarded $210,230 for Count II, or exactly one year's salary based on Plaintiff's counsel's closing argument. Plaintiff's closing argument, and the jury's compensatory damages award, are improper and unsupported because salary was not an element of damages for Count II based upon the Court's final jury instructions, which was adopted without modification from Plaintiff's proposed instructions. (Dkt. No. 423, p. 33).[3] Indeed, this court recognized that PolyOne was required to prove that the

---

[2] If the jury found that Dr. Lu intended for Kutka to breach his employment contract by soliciting feedback about office layout, Dr. Lu's conduct (as imputed on Nantong Polymax and Polymax TPE) is privileged because the purpose was to set-up the operations for Polymax TPE in Waukegan, Illinois. *HPI Health Care Services, Inc.*, 131 Ill. 2d 145, 157 (1989) ("Courts will recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights.")

[3] PolyOne submitted proposed pre-trial jury instructions related to damages for the tortious interference with contract claim to which Defendants did not object. (Dkt. No. 419, Proposed Jury Instruction No. 20). The proposed instructions requested, among other things, that PolyOne

tort of must have proximately caused damages for PolyOne to recover under Count II. (Tr. 1687:23-1689:8). PolyOne failed to do so.

The jury could not award damages based on Kutka's salary for the tortious interference claim, and PolyOne is not entitled to recover any part of Kutka's salary from these Defendants under Illinois law. Accordingly, judgment as a matter of law should be granted in favor of Defendants for lack of any evidence of damages.

**b. Defendants Are Not Liable for Kutka's Salary Forfeiture Under Illinois Law.**

Defendants also cannot be held liable for Kutka's salary for the tortious interference claim under Illinois law because salary forfeiture is an equitable relief, and Defendants never received or benefitted from the salary that PolyOne paid to Kutka only. *Henry Schein, Inc. v. Pappas*, No. 14 C 5019, 2016 WL 5341804, at *5 (N.D. Ill. Sept. 23, 2016) (*citing Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006)(finding that forfeiture of compensation paid is a remedy that is equitable in nature and third-parties are not liable to repay funds that were never in its possession).

In *Henry Schein, Inc.*, which is instructive on the issue of salary forfeiture, the plaintiff sued the competitor, the departing employee, and the departing employee's son for, *inter alia,* aiding and abetting breach of fiduciary duty and tortious interference with contract. The court awarded summary judgment in favor of the plaintiff against the individual defendants who failed to appear. Although the plaintiff sought to recoup compensation paid to the departing employee from the competitor and the son, the court declined to hold them liable for the compensation they

---

must prove, by preponderance of the evidence, actual loss proximately caused by Kutka's breach of employment contract. (*Id.*). Further, PolyOne submitted instructions that actual loss must be proven with reasonable certainty. (*Id.*). Although the Court did not include final instructions related to proximate causation, this Court recognized that any damages must still be proximately caused by the breach of contract. (Tr. 1688:21-1689:6).

never benefitted from, finding that "[t]he Illinois Appellate Court has characterized the forfeiture of compensation paid by an employer to a breaching fiduciary as a remedy that is equitable in nature and that stems from "considerations of public policy rather than...the injury to the principal." *Id.* (*citing Monotronics Corp. v. Baylor,* 107 Ill. App. 3d. (Ill. App. Ct. 1982)).

Here, the jury does not have the authority under Illinois law to award the equitable remedy of salary forfeiture; the power belongs solely to the court. There was no testimony or evidence at trial that Defendants ever received or benefited from the salary that PolyOne paid to Kutka. Kutka was the sole beneficiary of the salary, and PolyOne was entitled to recover the salary as his employer under Ohio law. But that does not mean that Defendants, as third parties, can be jointly and severally liable for Kutka's salary. Equitable principles do not justify joint and several liability against Defendants where they did not benefit from Kutka's salary. Therefore, this Court should strike the compensatory damages of $210,230 awarded by the jury.

**c. Punitive Damages Must Be Based Upon Compensatory Damages.**

Nor should the current punitive damages award stand. PolyOne failed to introduce any evidence of damages proximately caused by Defendants' tort. Under Illinois law, punitive damages cannot be awarded in the absence of any compensatory damages. *E.g. Kemner v. Monsanto Co.,* 217 Ill. App. 3d 188, 199–200 (1991) ("[S]ince there are no underlying compensatory damages, no punitive damage award can stand."). Here, the jury awarded $50,018 against each of the four defendants, or exactly 25% of Kutka's annual salary (as argued by PolyOne counsel) assessed against each defendant. Since PolyOne did not have any evidence of damages proximately caused by Defendants' actions, the punitive damages should be stricken.

***d.* The Evidence Does Not Support An Award of Punitive Damages.**

This Court should find, as a matter of law, that the punitive damages award is not supported by any evidence on the record that rises to the level of willful, malicious, or egregious conduct on the part of Defendants. *Roboserve, Inc. v. Kato Kagaku Co.,* 78 F.3d 266, 275–77 (7th Cir. 1996) ("Illinois courts do not favor punitive damages and insist that plaintiffs must establish 'not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness."). Court must be careful to allow punitive damages awards to stand because the conduct must involve "some element of outrage similar to that usually found in a crime." *Id.* (citing Restatement (Second) of Torts §908, comment b (1979)). There must be some evidence of a malicious intent to injure the plaintiff; otherwise, without clear evidence of malice or willfulness, the question of punitive damages should not even be submitted to the jury. *Id.* at 276 (*citing Home Sav. & Loan Ass'n of Joliet v. Schneider,* 108 Ill.2d 277 (1985)).

In this case, there is no basis to support the punitive damages awarded by the jury in connection with the tortious interference with contract claim. The only evidence supporting the tortious interference claim relate to Kutka (1) providing information to Defendants concerning the publicly-available Supreme Corq equipment in March 2011; (2) attempting to recruit Tony Henry or Rob Banning on behalf of Defendants; and (3) providing input on office layout in 2013 shortly before Kutka joined Polymax TPE. None of these actions is evidence of Defendants intent to harm PolyOne, nor does the evidence demonstrate, in any way, extraordinary or exceptional conduct that shows malice or willfulness. There is simply no connection between the actions in support of the tortious interference claim, and any extraordinary conduct on the part of Defendants designed to harm PolyOne. The punitive damages award should therefore be stricken entirely. *Roboserve, Inc.*, 78 F.3d at 277 (reversing district court's denial of the

defendant's motion for judgment as a matter of law on the question of punitive damages where there was no evidence of an intent to injure that constituted gross conduct or malicious behavior); *Boyd v. Tornier, Inc*., 656 F.3d 487, 497 (7th Cir. 2011) (punitive damages are an extraordinary measure to be applied sparingly); *Europlast, Ltd. v. Oak Switch Sys., Inc*., 10 F.3d 1266, 1276 (7th Cir. 1993)(reversing award of punitive damages because of the absence of evidence of "gross fraud" or "outrageous conduct").

    e. **Alternatively, Punitive Damages of $210,230 Violates the Due Process Clause.**

The award of $210,230 in punitive damages is also excessive and would violate the Due Process clause of the 14th Amendment because of the absence of any evidence of damages proximately caused by Defendants' actions. Whether an award of punitive damages is excessive under the Due Process clause is determined by three factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *E.E.O.C. v. AutoZone, Inc*., 707 F.3d 824, 838 (7th Cir. 2013)(*quoting State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 418 (2003)).

With respect to the first element, the United States Supreme Court has provided guiding factors to assess Defendant's misconduct based upon whether the harm was physical or economic; whether there was reckless indifference to the health or safety of others; whether the victim had financial vulnerabilities; whether the tortious actions were isolated or repeated; and whether the harm was the result of malice trickery, or deceit. *Id.* (*citing State Farm Mut., supra*) The reprehensibility of Defendants' conduct is the most important guidepost in determining whether punitive damages are reasonable. *BMW of N. Am., Inc. v. Gor*e, 517 U.S. 559, 575

(1996). None of these factors, though, weigh against Defendants where they did not cause PolyOne any physical damages, economic damages, or harm the health or safety of anyone. PolyOne was not financially vulnerable, the actions were not repeated, and Defendants did not engage in deceit or deception in communicating with Kutka. Rather, the trial evidence plainly demonstrated that Dr. Lu and Castile, who had a prior existing relationship with Kutka, communicated with him while he was still employed with knowledge of his employment contract and non-compete obligations without any harm or damages against PolyOne.

Under the second element, a total punitive award of $210,230 is grossly excessive based on the absence of any evidence that Defendants' tortious acts caused any damages. PolyOne did not produce any evidence at trial that it suffered any harm as a result of Kutka's breach of contract. As a result, a punitive award of $210,230 would exceed any constitutionally-permitted ratio between compensatory and punitive damages where compensatory damages are zero. *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process.")

Finally, the third element does not apply where the legislature has not imposed a cap on the common law claim for tortious interference with contract. *Int'l Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 489 (2006) ("As the legislature has not spoken on this issue, it is not necessary for us to further consider this guidepost.").

Based on the totality of the circumstances and the factors, a punitive damage award of $210,230 is excessive in light of any evidence of damages such that the punitive damages should be stricken entirely. To the extent the court finds that PolyOne has introduced and proved that it was entitled to some form of compensatory damages,[4] Defendants respectfully request that the

---

[4] For example, Plaintiff did not argue and did not present evidence that Defendants induced Kutka to breach his employment contract by downloading documents to various electronic

Court should reassess and reduce the amount of punitive damages based upon the 1:1 ratio as awarded by the jury. In addition, any reduction of the punitive damages award should be allocated 25% against each of the four defendants in this case.

In summary, there was no evidence relating to any actual damages proximately caused by any of the items of breach that were subject to Count II upon which a jury could have based its verdict. The court should grant this Motion as to Count II and enter judgment in favor of the Defendants. Alternatively, the punitive damages award should be eliminated or reduced based upon Due Process considerations.

## II.  ALTERNATIVELY, THE DAMAGES RELATED TO COUNT II SHOULD BE REDUCED OR MODIFIED UNDER RULE 59(E).

"Federal Rule of Civil Procedure 59(e) allows for post-trial motions to alter or amend a judgment, including by way of remittitur." *Baier v. Rohr-Mont Motors, Inc.,* 175 F. Supp. 3d 1000, 1007 (N.D. Ill. 2016). Although the court must accord deference to the jury's finding on damages, the court must also ensure that the finding on damages be supported by competent evidence. *Id.* (*citing Ramsey v. Am. Air Filter Co.,* 772 F.2d 1303, 1313 (7th Cir. 1985)). If the court finds the damages excessive, the proper remedy is remittitur and not a new trial. *Id.*

### a.  *Any Damages Related to Tortious Interference with Contract Claim Should Be Reduced to $10,008.21 Based On Collateral Estoppel.*

Under Rule 59(e), this Court should reduce the jury's award for the tortious interference with contract claim to $10,008.21, which reflects the jury verdict in Ohio for Kutka's breach of contract, based on collateral estoppel grounds. Collateral estoppel is an equitable doctrine that precludes a plaintiff from re-litigating issues that have previously been resolved by a court of

---

devices in 2013. However, PolyOne presented evidence that it spent $6,585 to retain Vestige to conduct a forensic examination in order to satisfy the CFAA threshold. (Tr. 728:3-14). If the court finds that the $6,585 can be considered part of the contract damages, Defendants respectfully request that the Court remit the award to no more than $6,585 in compensatory damages under this theory.

competent jurisdiction. *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307–08 (7th Cir. 1995). In order for collateral estoppel to apply, the following factors must be met: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Id.*

In this case, all the elements of collateral estoppel have been met to preclude PolyOne from obtaining damages for the tortious interference with contract claim greater than $10,008.21. *Schandelmeier-Bartels v. Chicago Park Dist.*, 2015 IL App (1st) 133356, ¶¶ 36-46 (finding that collateral estoppel precluded the plaintiff from obtaining compensatory damages in subsequent state law case after the 7th Circuit reduced damages in a prior federal case, which involved the exact same set of facts and injury).

First, the Ohio case and this case share identical elements as it relates to breach of contract and damages. In Ohio, the court instructed the jury that they must find the following by preponderance of the evidence on the breach of contract claim against Kutka under Ohio law: (1) PolyOne and Kutka entered into an employment contract; (2) Kutka breached the material terms of the contract; (3) PolyOne substantially performed under the contract; (4) PolyOne sustained damages as a result of Kutka's breach of employment contract. (Exhibit A: 897:9-898:4). Likewise, the essential elements of the tortious interference with contract claim under Illinois law require a (a) breach of contract; and (b) damages actually caused by the breach of contract. *George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983). Accordingly, both the Ohio and Illinois cases share the same elements requiring a breach of the same employment contract, and damages from the breach.

Indeed, the case PolyOne presented to the Ohio jury was the exact same as this case concerning Kutka's breach of his employment contract. As the Ohio Court instructed the jury:

> Now, PolyOne asserts that Mr. Kutka breached the noncompetition during employment agreement by assisting Polymax in setting up its business with Nomacorc and assisting Polymax in recruiting employees and consultants for its United States operation, by assisting Polymax in acquiring equipment for use in China and later in its United States operation and business, and by assisting Polymax in developing its plant layout in the United States, all while employed by PolyOne. (Exhibit A at 899:7-16)

Like the Ohio case, PolyOne also argued that Kutka breached his employment contract by assisting Polymax with the Supreme Corq equipment, by recruiting personnel, and by assisting Polymax TPE with plant layout while employed at PolyOne. The first element of collateral estoppel has thus been satisfied.

Second, the issue was actually litigated since PolyOne obtained a jury verdict for the breach of employment contract claim for $10,008.21, including $0 for failure to return confidential information. (Exhibit B: Ohio Jury Interrogatory). Third, the Ohio court entered final judgment after PolyOne settled with Kutka. (Exhibit C: Final Judgment). The final judgement in the amount of $981,391.60 incorporated the jury verdict entered by the jury against Kutka, in addition to attorneys' fees, which included the damages assessed by the Ohio jury for the breach of employment contract claim. Finally, PolyOne was fully represented at the Ohio trial, and indeed benefited financially from the judgment and settlement with Kutka.

All the elements of collateral estoppel have therefore been met such that PolyOne should be precluded from obtaining damages greater than $10,008.21 for its tortious interference with contract claim against Defendants. *Hailey v. City of Camden*, 650 F. Supp. 2d 349, 358 (D.N.J. 2009) (applying collateral estoppel to preclude plaintiff from obtaining compensatory damages beyond what was awarded in a prior trial because the plaintiff suffered one injury only and therefore cannot obtain double recovery notwithstanding different legal theories); *see also*

*Sommerfield v. City of Chicago,* No. 08 C 3025, 2013 WL 4047606, at *12 (N.D. Ill. Aug. 9, 2013), aff'd, 863 F.3d 645 (7th Cir. 2017)(*citing Hailey, supra*)(holding that a plaintiff may not receive "separate and duplicative compensatory damages awards for the same injuries.")

### III. DEFENDANTS ARE ENTITLED TO SET-OFF BASED UPON THE ENTIRE AMOUNT OF KUTKA'S SETTLEMENT.

If this Court finds that Defendants are liable to pay any portion of Kutka's salary based upon the tortious interference with employment contract verdict, it should be reduced by the entire amount of Kutka's settlement with PolyOne, or ▊▊▊▊. (See Exhibit D: Settlement Agreement(Under Seal)). Defendants are entitled to a setoff under the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/2(c)) (the "Act"), which states the following in relevant part:

> (c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide **but it reduces the recovery on any claim against the others** to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater. (emphasis added).

The Act applies to joint tortfeasors, and concurrent and successive tortfeasors. *Patton v. Carbondale Clinic*, S.C., 161 Ill. 2d 357, 368 (1994). Although the Illinois Supreme Court has ruled that intentional tortfeasors are not entitled to contribution under the Act (*see Gerill Corp. v. Jack L. Hargrove Builders, Inc*., 128 Ill.2d 179 (1989)), the holding does not extend to releases under subsection (c) of the Act, which was put in place to prevent double recovery. *See Foster v. Principal Life Ins. Co*., 806 F.3d 967, 974, N.2 (7th Cir. 2015).

In their settlement agreement, PolyOne and Kutka did not allocate or apportion the specific amounts related to any of the three claims which they were settling. The absence of an allocation of specific claims is of consequence under Illinois law. The Illinois Supreme Court has

held that if a plaintiff and settling tortfeasor fail to apportion fault or otherwise separate out the claims in the settlement agreement, then defendants in a subsequent suit are entitled to setoff for the entire settlement based upon the same injury. *Patton v. Carbondale Clinic*, S.C., 161 Ill. 2d . at 371 ("We agree and hold that defendant should not bear the burden of plaintiff's failure to properly allocate the Zieba settlement.") The purpose of the Act is to protect the non-settling party's financial interests and to ensure that the plaintiff is entitled to only recover once for the same injury. *Id.* at 370; *also Babikian v. Mruz,* 2011 IL App (1st) 102579, ¶¶ 22-23. In *Babikian,* for example, the trial court denied a post-trial motion for a $70,000 setoff following a plaintiff's verdict in a medical malpractice case based on various claims. The Illinois Appellate Court (1st) reversed under *Patton* and held that the defendant was entitled to a full $70,000 setoff based on plaintiff's settlement with another joint-tortfeasor where the plaintiff failed to apportion between various claims in the settlement agreement. *Id.* at ¶¶22-23. The full ███████ setoff should apply in this case where the settlement agreement with Kutka failed to apportion the various claims. Accordingly, this court should reduce any final judgment by ███████ as a setoff for Kutka's prior settlement with PolyOne under the Act.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that this Court grant Defendants' Rule 50(b) Motion and direct judgment in favor of Defendants on Count II notwithstanding the jury's verdict. Alternatively, Defendants respectfully request that this Court grant their Motion Under Rule 59(e), and reduce the assessed damages to a maximum of $10,008.21 based upon collateral estoppel and the jury's verdict in Ohio. There should be no punitive damages, but if allowed, the same should be reduced to the amount of the compensatory award. Defendants also respectfully request that this Court reduce any compensatory damages

by ▓▓▓▓ as a setoff based upon the settlement between PolyOne and Joe Kutka, which in this case would reduce any judgment to zero.

Dated: July 10, 2019　　　　　　　　　　　DENTONS US LLP

　　　　　　　　　　　　　　　　　　　　By: /s/ William M. Gantz
　　　　　　　　　　　　　　　　　　　　　　　William M. Gantz
　　　　　　　　　　　　　　　　　　　　　　　One of the attorneys for Defendants
　　　　　　　　　　　　　　　　　　　　　　　Yun Martin Lu, Thomas Castile,
　　　　　　　　　　　　　　　　　　　　　　　Polymax Thermoplastic Elastomers
　　　　　　　　　　　　　　　　　　　　　　　LLC  and Nantong Polymax
　　　　　　　　　　　　　　　　　　　　　　　Elastomer Technology Co., Ltd.

William M. Gantz (6204397)
DENTONS US LLP
One Beacon Street
Suite 25300
Boston, MA 02108
(617) 235-6816

Tony K. Lu (*Pro hac vice*)
DENTONS US LLP
One Beacon Street
Suite 25300
Boston, MA 02108
(617) 235-6817

85334130

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing **DEFENDANTS' RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION PURSUANT OT RULE 59(e)** with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ William M. Gantz

111105105\V-4